UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

LAWRENCE PROCTOR,      )
                           )
      Plaintiff,     )
                           )         Case No.
v.                    )    17-cv-348-JMH-MAS
                           )
GEICO GENERAL INSURANCE   )    **MEMORANDUM OPINION**
COMPANY,              )       **AND ORDER**
                           )
      Defendant.    )

\*\*\*

Lawrence Proctor claims that he was involved in an accident involving his truck and fifth-wheel recreational vehicle in January 2015. After the accident, Proctor submitted an insurance claim to GEICO to compensate him for damages to his RV. After investigating the claim, however, GEICO denied coverage because GEICO concluded that the damage to the RV claimed by Proctor preexisted the accident in January 2015. As a result, Proctor brought this lawsuit for breach of contract and bad faith. But Proctor made a misrepresentation of material fact pertaining to the purchase price of the RV that permitted GEICO to deny coverage under the insurance policy. As a result, GEICO is entitled to judgment as a matter of law.

## I.  Factual and Procedural Background

Plaintiff Lawrence Proctor claims that he was involved in a single-vehicle accident on January 6, 2015, in Mount Vernon, Kentucky, involving his truck and 2003 Keystone Challenger RV.

1

[DE 1-1 at 6].  On the Initial Loss Report, Proctor described the accident using the following narrative:

> I was turning into a [s]ervice station when a "DRUGGIE" walked out in front of me. I veered off the road to keep from hitting the man with my truck and my RV [f]ifth[-]wheel [t]railer. I went down into a Catch basin alongside the road. This basin was approximately 6 feet deep and was very rough. I needed a wrecker to get pulled back onto hard surface. The rear stabilizers [were] pushed back and folded over twisting all of the metal and ruining the stabilizers. The Skirting [alongside] the door was twisted and mangled. The plastic end caps were [shaken] loose and lost. The spare tire is carried underneath the belly of the RV. It may be damaged. The three slides were dislodged, and are sitting disoriented in the RV. All three slides are now sitting at an angle to the RV. I have attempted to tighten the slides up to prevent air leakage, I reside in this 37[-]foot RV and it has been cold outside.

[DE 41-1 at 3, Pg ID 464; *see* DE 41-2 at 1, Pg ID 487].[1]  After the accident, the vehicle was extracted from the catch basin by Throughtruck, a towing company.  [DE 49-3].  There were no witnesses to the collision and no police report was filed after the accident.

On January 17, 2015, Proctor submitted a claim to his insurance carrier, GEICO.  [DE 41-1].  The GEICO insurance policy provides the following measures of liability for insurance claims, (1) "[T]he actual cash value of the stolen or damaged property at

---

[1] Most of the narrative that is reproduced in Defendant's Amended Motion for Summary Judgment [DE 41-1 at 3, Pg Id 464] is not visible in the "Customer's Description" dialogue box on the copy of the Initial Loss Report Form [DE 41-2 at 1, Pg Id 487].  Still, the Plaintiff does not dispute the accuracy of the narrative in his Response.  [DE 49 at 1, Pg ID 724].

the time of the loss," or (2) "[T]he amount necessary to repair the damaged property to its pre-loss condition." [DE 41-3 at 10, Pg ID 498 (emphasis omitted)]. The policy also states that

> Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:
>
> (a) at the time of application; or
> (b) at any time during the policy period; or
> (c) in connection with the presentation or settlement of a claim.

[Id. at 28; Pg ID 516].

After Proctor filed the insurance claim, Chris Cirillo, a Senior Field investigator, investigated the claim on behalf of GEICO. [DE 41-4 at 1, Pg ID 521]. According to Cirillo, a search of the RV's title and claims history revealed that the RV was salvaged in June 2013. [*Id.* at 1, Pg ID 522]. Additionally, Cirillo claims that, prior to Proctor's purchase of the RV, Shelter Insurance Company identified the RV as a total loss and that the RV was listed for sale at a public auction by Copart, Inc. [*Id.* at 1-2, Pg ID 522-23]. Proctor does not deny the accuracy of this information but asserts that other than Cirillo's search of the title and claims history, the other material cited in support of this factual statement is inadmissible evidence. [DE 49 at 2, Pg ID 725].

According to GEICO, photographs of the RV that were used when it was previously listed for sale by Coparts, Inc., indicate that

the damage claimed by Proctor preexisted the accident on January 6, 2015. [See DE 41-1 at 4, Pg ID 465; DE 41-4 at 5-9, Pg ID 525-29]. Cirillo claims that he located the photographs using a Google cache search on January 29, 2015, and that copies were taken from easyexport.us, an auto auction website. [DE 41-4 at 2, Pg ID 522].

Proctor does not dispute that his RV was previously sold by Coparts, Inc., but argues that the photographs and documents allegedly obtained from Coparts are unauthentic and inadmissible.[2] [DE 49 at 2-3, Pg ID 725-26]. Proctor has also provided an affidavit of Jim Bowman who states that he sold the 2003 Keystone Challenger RV to Proctor and that it had been salvaged because of water damage. [DE 49-5 at 1, Pg ID 772]. Bowman also asserted that he had repaired the RV and that the RV had no exterior damage when Bowman sold it to Proctor. [Id.].

On January 30, 2015, Cirillo took photographs of Proctor's RV and conducted a recorded interview with Proctor. [See DE 41-4 at 2, 11-46, Pg ID 522, 531-66]. In the interview, Cirillo identified himself as a representative of GEICO insurance company. [Id. at 20, Pg ID 540]. Additionally, Proctor affirmatively indicated that he was aware that the interview was being recorded. [Id. at

---

[2] In fact, Proctor has filed a Motion in Limine [DE 48] to exclude this evidence. This alleged evidence of prior damage is included here to help explain the initial explanation for GEICO's denial of Proctor's claim, but it is not relied upon by the Court in this memorandum order and opinion.

21, Pg ID 541]. Proctor stated that he had owned the RV since December 2013 and bought it from a man in Berea, Kentucky. [*Id.* at 25, 37 Pg ID 545, 557]. Furthermore, Proctor gave a lengthy narrative of the accident. [*Id.* at 26-31, Pg ID 546-51].

Then, Cirillo asked Proctor how much money he paid for the RV, to which Proctor responded, "I don't really remember. I take a lot of medicine." [*Id.* at 37, Pg ID 557]. Cirillo responded by saying, "We're going to need to find out . . . . Or you can tell me if you remember." [*Id.*]. Proctor replied, "16 something. I don't know what it was. I don't know who I can find out from." [*Id.*]. Cirillo asked, "16 what, thousand?" [*Id.*]. Proctor replied, "Yeah." [*Id.*].

Later, Cirillo asked Proctor about the condition of the RV when Proctor purchased it. [*Id.* at 39, Pg ID 559]. Proctor stated that he had done some work on the RV "[b]ut it was in decent condition." [*Id.*]. Next, Cirillo asked, "Was any of this damage on there before?" [*Id.*]. Proctor responded, "No." [*Id.*].

Additionally, Cirillo asked Proctor about any repairs that he had made after he purchased the RV. [Id. at 41, Pg ID 561]. Proctor responded that he had made minor cosmetic changes with the electricity, had worked on the slides, and had gotten a new hydraulic pump. [*Id.* at 41-43, Pg ID 561-63].

Subsequently, GEICO denied Proctor's claim. Initially, GEICO sent two letters in February 2015, one to Proctor and another to

his previous attorney, making a reservation of rights under the contract because Proctor "may have breached condition 13 in Part V" of his contract dealing with fraud and misrepresentation. [DE 41-11 at 1-4, Pg ID 646-49]. Then, on June 15, 2015, GEICO sent a letter to Proctor denying his claim because after investigation, GEICO determined that the claimed damages were "pre-existing damages" that "occurred before the RV was listed on the policy." [*Id.* at 5, Pg ID 650].

Proctor filed a lawsuit alleging breach of contract and bad faith in violation of the Kentucky Unfair Claims Settlement Practice Act ("UCSPA") in Kentucky state court on June 1, 2017. [DE 1-1 at 5-9]. In the state court complaint, Proctor asserted that "The Keystone RV had a market value of approximately $6,000.00 immediately prior to this damage." [Id. at 6]. GEICO answered in the state court action on June 22, 2017. [Id. at 10-15].

The state court record indicates that GEICO served interrogatories on Proctor. In response to an interrogatory, Proctor stated that

> The approximate value of the RV pre-accident was likely between $10,000 and $12,000, based upon the purchase price paid by the Plaintiff ($7,000.00) and the additional improvements made by the Plaintiff (installation of a hydraulic pump at about $3,500.00, repair of A/C and furnace at about $750.00, and various small repairs and upgrades to the interior).

[DE 1-3 at 4]. Additionally, Proctor admitted that he was seeking to recover damages in excess of $75,000. [*Id.* at 10]. As a

result, GEICO removed the matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. [DE 1].

On May 30, 2018, a deposition was held where Proctor testified about the condition of the vehicle at the time of purchase and the purchase price.[3] Initially, it appears that Proctor was confused about the date he purchased the RV. [*See* DE 49-1 at 1-3, Pg ID 741-43]. Proctor explained that he takes prescription medications, specifically Warfarin and Lyrica, that affect his memory. [Id. at 3, Pg ID 743]. Still, Proctor indicated that he could understand and accurately respond to the questions during the deposition. [*Id.* at 3-4, Pg ID 743-44].

During the deposition, Proctor testified that he looked at the RV twice before purchasing it but did not have it inspected or appraised. [DE 41-10 at 2-4, Pg ID 635-37]. Proctor also asserted that he was not aware that the RV was damaged by a fire in 2013 until after the accident in January 2015. [*Id.* at 2, Pg ID 635]. Additionally, Proctor testified that he purchased the RV for $7,000 but claimed that the RV had a book value of "23 or 25 [thousand]" at the time of purchase. [*Id.* at 4, Pg ID 637]. Finally, Proctor testified that he learned about the RV's salvaged title when completing the registration paperwork. [*Id.*].

---

[3] The parties have only submitted limited excerpts of the deposition.

Proctor was also asked about improvements that he made to the RV during the deposition. Proctor was asked,

> Now, in your answers to interrogatories, you said you – and I asked you this earlier – I said, [d]id you ever install a hydraulic pump? And you said, No.
> Now, I'm looking at your answers to interrogatories, and you say you installed a hydraulic pump at about $3,500?

[*Id.* at 5, Pg ID 638]. Proctor responded, "That was the cost of it. I still have the hydraulic pump. And, no, I will not be installing it. I – I hope to sell that, one of these days, anyway." [*Id.*] Proctor was then asked, "So you never installed the hydraulic pump?" [Id.]. To which, Proctor replied, "No, I bought it . . . . I did not install it." [*Id.*].

Furthermore, Proctor was asked about other repairs or improvements made to the RV. In his deposition, Proctor testified that he had spent $150 on labor to repair the A/C and furnace in the RV. [*Id.* at 6, Pg ID 639]. Finally, Proctor testified that he had made no additional improvements or repairs other than small repairs and upgrades to the interior. [*See id.*].

Copies of the RV's transfer of title and certificate of title are contained in the record. The "Transfer of Title by Owner" appears to be signed by Proctor and indicated that the purchase price of the RV was $4,682.00. [DE 41-7]. Additionally, the "Certificate of Title" indicated that the RV was a rebuilt vehicle. [DE 41-8]. Furthermore, a sales receipt from Branham Auto Sales,

provided by Proctor, indicates that the base price of the RV was $4,682 and the total price paid was $5,000 after tax and fees. [DE 49-2 at 1, Pg ID 758]. Lastly, the sales documents appear to indicate that the list price for the 2003 Challenger RV was $7,995 and that the average retail price for similar RVs was $14,525.[4] [DE 49-2 at 4, Pg ID 761].

Additionally, Proctor has submitted a damage report with his response in opposition. The report was compiled after two inspections by Steve Elswick. [DE 49-6]. The report contains pictures and diagrams of Proctor's RV. [*See id.*]. Additionally, the report indicates that Proctor's RV was not fit for human habitation at the time of the report and that a comparable NADA value for a 2003 Keystone Challenger RV was $24,390. [*Id.* at 11-12, Pg ID 783-84].

GEICO initially filed this motion for summary judgment on October 29, 2018. [DE 37]. GEICO sought leave to amend the motion for summary judgment to provide numbered paragraphs in the fact section, but otherwise no substantive changes were made to the initial motion. [*See* DE 40; DE 41]. The Court granted GEICO leave to amend the initial motion for summary judgment and also granted a short extension for Proctor to respond to the amended motion.

---

[4] It is unclear what condition is associated with the average retail price listed on the sales documents or why the 2003 Keystone Challenger purchased by Proctor was listed for a price that was considerably below the average retail price of similar RVs.

[DE 42].  Proctor has responded [DE 49] and GEICO has replied [DE 56], making this matter ripe for review.

## II.  Standard of Review and Applicable Law

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted).  The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor.  *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

In a diversity action, the Court must apply the substantive law of the forum state and federal procedural law.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783

(6th Cir. 2014). Thus, "where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Ultimately, to determine whether summary judgment should be granted here, the Court must look to Kentucky state law and court decisions, as well as other relevant materials. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

### III. Analysis

The only question currently before the Court is whether Proctor misrepresented a material fact that relieved GEICO from its obligation to cover the loss and entitles GEICO to judgment as a matter of law. Here, GEICO is entitled to summary judgment as a matter of law because Proctor misrepresented a material fact pertaining to the original purchase price of the RV during the claim process that permitted GEICO to deny coverage per the plain language of the insurance policy.

### A. Breach of Contract

In a similar case, the United States District Court for the Western District of Kentucky acknowledged that contractual provisions concerning fraud, misrepresentation, or concealment are "common to most fire insurance policies and . . . uniformly held valid." *Wright v. Grange Mut. Cas. Co.*, No. 3:13-CV-747-CRS, 2015

WL 1298574, at *2 (W.D. Ky. Mar. 23, 2015) (quoting *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky. 1975) (internal citations omitted)).

Additionally, under Kentucky law, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977); *see Masler v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 633, 635–36 (Ky. 1995). Contract interpretation is generally a question of law to be decided by the Court. *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016); *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). A contract containing clear and unambiguous terms is enforced as written. *Ky. Shakespeare Festival, Inc.*, 490 S.W.3d at 695; *Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 873.

Here, Proctor does not dispute the validity or enforceability of any of the provisions contained in the GEICO policy, including the fraud and misrepresentation provisions at issue here. [See DE 41-3 at 28, Pg ID 516]. Proctor does, however, assert that there are genuine disputes of material fact concerning whether he made material misrepresentations to GEICO while pursuing his insurance claim. [See DE 49].

The GEICO policy does not define the term "material."[5]  The insurance policy simply states that the misrepresentation of a material fact must be made knowingly.  [Id. at 28; Pg ID 516]. Additionally, this Court is unable to find a Kentucky Supreme Court case that explicitly addresses the standard for a material fact in the context of a misrepresentation made during the process of making an insurance claim.  The parties have also not cited any binding authority under Kentucky law outlining the proper standard of materiality in the context of an insurance claim.

There is ample authority in Kentucky regarding material misrepresentations made in an application for insurance coverage. The law in Kentucky is clear that "a material misrepresentation in an application for an insurance policy, though innocently made, will avoid" the policy.  *See, e.g.*, *Metro. Life Ins. Co. v. Tannenbaum*, 240 S.W.2d 566, 569 (Ky. 1951); *Prudential Ins. Co. of Am. v. Lampley*, 180 S.W.2d 399, 401 (Ky. 1944); *Baker v. Ky. Farm Bureau Mut. Ins. Co.*, No. 2017-CA-118, 2018 WL 3814763, at *3 (Ky.

---

[5] Still, the parties do not argue that the term material as used in the policy is ambiguous.  This is not a case about ambiguity of a term, as opposed to *Frigaliment Importing Co., Ltd. v. B.N.S. Int'l Sales Corp.*, a case familiar to most law students, where the court considered whether the word "chicken" in a contract referred to broilers or fowl.  *See* 190 F. Supp. 116, 117 (S.D.N.Y. 1960). This case concerns what constitutes a misrepresentation of a material fact in the context of an insurance claim under Kentucky law.

Ct. App. Aug. 10, 2018).[6] In the context of an insurance contract, "a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of life insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated." *Tannenbaum*, 240 S.W.2d at 569.

Additionally, K.R.S. § 304.14-110, cited by Proctor, provides that

> All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent; or
>
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the

---

[6] The Court acknowledges Kentucky Supreme Court Rule 76.28(4)(c), which states that unpublished opinions are not to be cited or used as precedent in the courts of Kentucky. Still, the United States Court of Appeals for the Sixth Circuit "permits citation of any unpublished opinion, order, judgment, or other written disposition." 6 Cir. R. 32.1(a). Additionally, there is ample published support for the proposition in text. The recent unpublished disposition of the Kentucky Court of Appeals simply indicates that this legal principle is still commonly relied upon by the courts of Kentucky.

application for the policy or contract or otherwise. This subsection shall not apply to applications taken for workers' compensation insurance coverage.

Additionally, the parties cite *Davies*, when defining materiality. *See Davies v. Centennial Life Ins. Co.*, 128 F.3d 934 (6th Cir. 1997), *implicit overruling on other grounds recognized by Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 463-64 (6th Cir. 2009). In *Davies*, the Sixth Circuit considered the effect of a misrepresentation or omission in a health insurance application governed by ERISA. The Sixth Circuit held that, under federal common law, "the insured's good faith is irrelevant, and that a misrepresentation is 'material' if it 'materially affects the insurer's risk or the hazard assumed by the insurer.'" *Davies*, 128 F.3d at 943 (quoting *Tingle v. Pacific Mut. Ins. Co.*, 837 F. Supp. 191, 193 (W.D. La. 1993)). *Davies* also stands for the proposition that misrepresentations or omissions need not be connected with or related to the illness or injury for which the insured seeks payment of benefits to be material. *Id.* at 943-44.

Of course, the case before the Court differs slightly from the cases and authorities cited above because the alleged material misrepresentations here were made during the insurance claim process, not during or in relation to the application process for insurance coverage. Furthermore, there is no allegation that Proctor misrepresented material facts when he applied for insurance coverage with GEICO.

15

In this case, the relevant question should not be whether the false statement of fact materially affected the risk or hazard assumed by the insurer because there is already an insurance policy where the insurer has agreed to accept risk in exchange for a premium paid. Here, the relevant inquiry is whether the false statement of fact had a substantial, important, or significant impact on the claim itself.

Still, there does not appear to be a decision of the Kentucky Supreme Court that expressly addresses when a fact is material in the context of the insurance claim process. When a federal court sits in diversity, and there is no decision of the forum state's highest court that is directly on point regarding the issue before the court, the federal court must make an "*Erie* guess" to determine how the forum state's highest court would resolve the issue. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355 (6th Cir. 2013).

Ultimately, the legal principles that apply to false statements of fact made during the insurance application process should apply with equal weight in the context of misrepresentations made during insurance claims. Here, where the parties have not contractually defined the meaning of materiality regarding a false statement of fact during an insurance claim, it seems clear that Kentucky courts would apply the same standard for materiality that is applied for material misrepresentations made in insurance

contracts. Thus, a fact that is knowingly[7] concealed or misrepresented during the insurance claim process is material if the insurer, acting reasonably and naturally in accordance with the usual practice of insurance companies under similar circumstances, would not approve the claim or would have significantly altered the recovery amount or claim investigation process if the substantial truth had been stated.

This standard is nearly identical to the materiality standard employed by Kentucky courts when determining whether a false statement made in the context of an insurance application constitutes a material misrepresentation. *See Tannenbaum*, 240 S.W.2d at 569. This also comports with *Pacific Mut. Life Ins. v. Arnold*, which explained that "[t]he word 'material' . . . means 'substantial,' 'important,' or 'of consequence,' as contradistinguished from 'trivial' or 'minor.'" 90 S.W.2d 44, 48 (Ky. 1935).

Additionally, the standard recited by the Court above is consistent in principle with the materiality standards used in *Davies* and K.R.S. 304.14-110. The insurance claim process is inextricably connected with the insurance underwriting and risk

---

[7] Under Kentucky law, a material misrepresentation of fact, even if made innocently, may void the insurance policy. *Tannenbaum*, 240 S.W.2d at 569. Here, however, the policy states that the concealment of misrepresentation of material fact must be knowingly made before coverage may be denied. [See DE 41-3 at 28, Pg ID 516].

allocation process. Concealment or misrepresentation of material facts that result in claim payments that are higher than the replacement value of the insured property result in a windfall for the claimant and reduce the principle amount of money available to other insured parties in the risk pool, potentially resulting in higher insurance premiums for other insured persons and economic loss for insurance companies. Additionally, the investigation of fraudulent insurance claims or material misrepresentations during the insurance claim process imposes costs for insurance companies that are likely passed on to other consumers. Thus, from an economic standpoint, every concealment or misrepresentation of a material fact during the insurance claim process impacts risk allocation and management in the aggregate.

In sum, the honest disclosure and representation of facts is just as important during the insurance claim process as it is during the insurance application process. Under Kentucky law, an insurance company is entitled to deny a claim when a material fact is concealed or misrepresented during the insurance claim process. As discussed above, a fact that is knowingly concealed or misrepresented during the insurance claim process is material if the insurer, acting reasonably and naturally in accordance with the usually practice of insurance companies under similar circumstances, would not approve the claim or would have

significantly altered the recovery amount if the substantial truth had been stated.

**(1)  Purchase Price**

First, it is undisputed that Proctor misrepresented the price he paid for the RV.  Even so, Proctor argues that the purchase price is not material to the claim and that, in any event, the misrepresentation was made innocently.

During a recorded interview in January 2015, Proctor stated that the purchase price of the RV in December 2013 was $16,000. [De 41-4 at 37, Pg ID 557].  Subsequently, in a response to an interrogatory and during a deposition, Proctor asserted that the purchase price for the RV was $7,000.  [DE 1-3 at 4; DE 41-10 at 4, Pg ID 637].

Now, Proctor acknowledges that "[t]he statement that Plaintiff paid $16,000.00 for the RV is certainly not true."  [DE 49 at 11, Pg ID 734].  In fact, Proctor paid $4,682 as a base price for the RV, which came to a total price of $5,000 after inclusion of tax and fees.  [DE 49-2 at 1, Pg ID 758].  Thus, there is no dispute that Proctor initially made a false statement about the purchase price of the RV.

Second, the purchase price of property covered by an insurance policy, particularly a purchase price that is close in time to the insurance claim, is material to determining the pre-loss value of property during the claim process.

Kentucky courts have held that purchase price of real property was relevant to determining the value of property in the context of eminent domain. For instance, the court held that the purchase price of real property that was purchased in 1956 "was pertinent to the market value of that property on October 3, 1961." *Commonwealth Dept. of Highways v. Whitledge*, 406 S.W.2d 833, 836 (Ky. 1966); *see also Commonwealth Dept. of Highways v. Tackett*, 498 S.W.2d 630, 632-33 (Ky. 1973); *Kirk v. Commonwealth Dept. of Highways*, 495 S.W.2d 179, 179 (Ky. 1973).

Additionally, a purchase price that is significantly below fair market value of an asset may notify the insurance company of prior damage that may necessitate additional investigation during the claim process. For instance, in this case, a damage report submitted by Proctor indicated that the NADA value of a 2003 Keystone Challenger 34 TLB RV was $24,390. [DE 49-6 at 12, Pg ID 784]. Here, if Proctor had accurately reported that he paid only $5,000 for the RV, which apparently in good condition would have a fair market value of over $20,000, it likely would have notified the claim investigator that the vehicle may have been in poor condition at the time of purchase.

This conclusion that purchase price is a material fact in the insurance claim process is also bolstered by Proctor's response to an interrogatory. Previously, Proctor stated, "The approximate value of the RV pre-accident was likely between $10,000 and

$12,000, *based upon the purchase price paid by the Plaintiff ($7,000)* and the additional improvements made by the Plaintiff . . ." [DE 1-3 at 4 (emphasis added)]. Thus, Proctor relied on the purchase price in when estimating the pre-accident value of the RV, indicating that purchase price is material to determining the pre-loss value during the claim process.

Ultimately, the RV here was purchased just over one-year before the accident and insurance claim. As such, the purchase price is certainly substantially related to the pre-accident replacement value of the RV. As a result, the purchase price here was a material fact because had the substantial truth been stated regarding the purchase price, GEICO, acting reasonably and in accordance with the usual practice of insurance companies under similar circumstances would have been on notice of the pre-loss condition of the RV and would have altered the pre-loss value of the RV, which would have substantially affected the amount of recovery under the insurance policy.

Third, Proctor claims that his misrepresentation was made innocently, due to a mistake of fact. Thus, Proctor's argument is ultimately that he did not knowingly make any material misrepresentation of fact.

Proctor claims that he suffers from memory loss that resulted in his making the misrepresentation regarding the purchase price. But here, Proctor's allegations pertaining to memory loss are not

supported by any objective evidence in the record. Initially, when asked about the purchase price by Cirillo, Proctor stated that he "take[s] a lot of medicine." [DE 41-4 at 37, Pg ID 557]. Additionally, during his deposition, Proctor stated that prescription medications Warfarin and Lyrica cause his memory loss. [DE 49-1 at 3, Pg ID 743].

Still, the only evidence of Proctor's memory loss are the unsupported allegations made by Proctor. Proctor has submitted no medical records or statements from a medical professional that he has ever suffered from or has been treated for memory loss or neurological issues. There is no evidence or indication that memory loss has ever affected Proctor's personal or professional life in a significant way. There are no statements or attestations from a third-party that attest to Proctor's memory problem. Finally, there is no evidence that Proctor was actually prescribed prescription medications that are known to cause memory-loss or confusion as a side effect. Simply put, there is insufficient evidence in the record through which a reasonable jury could conclude that Proctor had a memory problem that was so severe that it demonstrates his misrepresentations regarding the purchase price of the RV were made innocently.

Of course, mistakes do occur; but the gravity of the initial error indicates that Proctor attempted to knowingly misstate and conceal the actual purchase price of the RV. Proctor stated that

he paid $16,000 for the RV. But he actually paid $5,000 in cash just approximately one year before the false statement. This is not a case where the initial misrepresentation was trivial or slightly inaccurate. Here, Proctor initially reported a purchase price that was $11,000 over the actual price. It is inconceivable that Proctor could have made such a significant error and not have known or suspected that the amount was incorrect.

Furthermore, Proctor claims that he only made the initial misrepresentation after being pressured by Cirillo to provide a purchase price. It is true that Proctor initially stated that he was not sure about the purchase price. [DE 41-4 at 37, Pg ID 557]. It is also true that Cirillo did say, "We're going to need to find out [the purchase price] . . . . Or you can tell me if you remember." [*Id.*]. But this statement does not amount to undue pressure or inducement. Proctor could have indicated that he truly did not know or that he would verify the price and follow-up with Cirillo. Instead, Proctor stated that he purchased the RV for "16 something." [*Id.*]. Then, after Cirillo confirmed that Proctor meant $16,000, Proctor affirmatively indicated that was what he meant. [*Id.*].

Additionally, Proctor also misrepresented the purchase price in his answers to interrogatories and during his deposition. As discussed previously, in answers to interrogatories and during his deposition, Proctor stated that he purchased the RV for $7,000.

23

[DE 1-3 at 4; DE 41-10 at 4, Pg ID 637].  Obviously, $7,000 is closer to the actual purchase price but it is still not accurate. Of course, these misrepresentations were made after the claim was denied by GEICO.  Still, they both confirm that Proctor made an initial misrepresentation of fact pertaining to the purchase price and that he failed to correct that mistake, even when he filed this lawsuit approximately two years after his claim was denied.

Also, the first time that Proctor ever corrected his misrepresentation about the actual purchase price of the RV was in his response to the pending motion for summary judgment.  On November 26, 2018, Proctor attached sales receipts to his response in opposition to the motion for summary judgment.  [DE 49-2]. These documents indicate that Proctor paid a base price of $4,682, which came to a total purchase price of $5,000 after taxes and fees.  Thus, it took Proctor approximately three years and ten months to accurately report the purchase price of the RV.

More importantly, Proctor's submission of the sales receipts indicate that he had the ability to verify the purchase price and correct his misrepresentation.  Clearly, at some point, Proctor knew that he only paid $5,000 for the RV and he failed to notify GEICO or his error in an effort to correct the mistake.

In sum, Proctor committed a material misrepresentation of fact when he stated that he purchased the RV for $16,000, when he actually purchased the RV for $5,000 one year before his

24

misstatement.  Even when viewing the facts in the light most favorable to Proctor, there is no genuine issue of material fact about whether Proctor knowingly committed a material misrepresentation of fact pertaining to the purchase price.  No reasonable jury could conclude, based on Proctor's unsupported allegations alone, that Proctor suffered from a memory problem so severe that it indicates that he did not know that he made a significant misrepresentation regarding the purchase price of the RV.  As a result, GEICO was permitted to deny the claim under the insurance policy and is entitled to judgment as a matter of law.

**(2)  Repairs After Purchase and Preexisting Damage**

GEICO also alleges that Proctor made misrepresentations of material fact pertaining to repairs made to the RV after purchase and whether the damages claimed preexisted the accident.  Still, having found that Proctor knowingly made a material misrepresentation regarding the purchase price of the RV, the Court need not determine whether Proctor made additional misrepresentations of material fact.

**B.  Bad Faith**

Proctor has also brought an extracontractual bad faith claim alleging violation of the Kentucky Unfair Claims Settlement Practices Act (UCSPA).  *See* K.R.S. § 304.12-230.  But here, since GEICO was permitted to deny the claim after Proctor's material misrepresentation of fact in January 2015, GEICO is entitled to

summary judgment on the extracontractual claims as a matter of law.

The elements for a bad faith claim under the UCSPA are:

(1) the insurer must be obligated to pay the claim under the terms of the policy;

(2) the insurer must lack a reasonable basis in law or fact for denying the claim; and

(3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

In this case, GEICO was permitted to deny coverage under the insurance policy because of Proctor's misrepresentation of material fact pertaining to the purchase price of the RV. As a result, GEICO did not lack a reasonable basis in law or fact for denying the claim.

## IV.  Conclusion

Ultimately, Proctor's material misrepresentation of fact about the purchase price of the covered RV permitted GEICO to deny coverage under the insurance policy and entitled GEICO to judgment as a matter of law. Additionally, Proctor has not demonstrated that GEICO denied his claim in bad faith. Accordingly, **IT IS ORDERED** as follows:

(1)  Defendant's amended motion for summary judgment [DE 41] is **GRANTED**; and

(2)   Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 2nd day of January, 2019.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge